IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| ex rel. THORNTON G. SANDERS | * | |
| | * | |
| v. | * | Civil No. JFM-02-3084 |
| | * | |
| NORTH AMERICAN BUS | * | |
| INDUSTRIES, INC., et al. | * | |
| | ***** | |

MEMORANDUM

Plaintiff Thornton G. Sanders moves for reconsideration or to alter or amend my decision granting the motion to dismiss of Defendant Deloitte & Touche USA LLP ("Deloitte"). In the memorandum accompanying my order of December 19, 2005, I explained that Sanders' claims against Deloitte were barred by the six-year statute of limitations set forth in the False Claims Act ("FCA"), 31 U.S.C. § 3731(b)(1). In his motion for reconsideration or to alter or amend judgment, Sanders argues that I mistakenly dismissed claims in Count III against Deloitte that fell within the limitations period. For the reasons stated below, the motion is denied.

I.

When North American Bus Industries, Inc. ("NABI, Inc.") first imported bus shells into the United States from Hungary, the shells were classified under a subheading for "bodies . . . of motor vehicles" and taxed at a rate of four percent. On June 29, 1998, Deloitte filed a protest with the Bureau of Customs and Border Protection ("Customs") on behalf of NABI, Inc. challenging the classification and requesting the bus shells be reclassified under a subheading for "motor vehicle." Imports from Hungary under this subheading were not taxed. The protest also requested refunds of custom duties on past shipments of bus shells. The protest was written by Deloitte employee Damon V. Pike, who submitted an affidavit to Customs in conjunction with

another ruling stating that he examined the bus shells as they arrived in NABI, Inc.'s Alabama production facility in January 1998.

In order to persuade Customs the bus shells were more like motor vehicles than bodies of motor vehicles, Deloitte claimed that a number of components were permanently attached to the bus shells at the time of importation.  Sanders alleges that, contrary to Deloitte's assertion, the axles, front suspension, rear suspension, rims, wheels, power steering, and brake chamber were not permanently installed and some were missing or incomplete.  According to Sanders, Deloitte lied about these items in order to make the facts of its case appear similar to another case in which Customs had ruled that the "motor vehicles" category was appropriate.  Sanders further alleges Deloitte was aware of the falsity of its statements because Pike examined the bus shells just five months before the protest was filed.[1]

Customs ruled in NABI, Inc.'s favor on November 20, 1998.  Sanders alleges that at some unspecified time prior to January 1999, Pike advised NABI, Inc. it could use this ruling to import future bus shells under the new classification and thereby avoid taxes.  NABI, Inc. allegedly did import bus shells under the new classification and some of these imports occurred after July 1999, although Sanders does not identify a single specific import.  Sanders does not allege that Deloitte assisted NABI, Inc. with any of these imports, or with any other Customs filings besides the June 1998 protest.

Sanders filed a motion to amend his complaint to name Deloitte as a defendant on June 30, 2005, and I granted the motion on July 19, 2005.  Regardless of whether the limitations

---

[1] The axles, rims, and wheels had been permanently installed on imported bus shells until NABI, Inc. allegedly changed its procedure sometime in the spring of 1998 -- after Pike's inspection -- so Deloitte may not have known of their impermanence when it filed the protest.


period stopped running June 30 or July 19, Sanders' claims are time-barred.

## II.

In Count III of his complaint, Sanders claims Deloitte is liable under the provision of the FCA codified at 31 U.S.C. § 3729(a)(7). This provision assesses liability on any person who "knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government." Under Sanders' theory, Deloitte caused NABI, Inc. to make statements to the government that allowed NABI, Inc. to avoid an obligation to pay taxes on bus shells imported after the Customs reclassification ruling in November 1998. Sanders contends Deloitte "caused" the false statements accompanying subsequent imports because Deloitte filed the original request for reclassification and then advised NABI, Inc. it could use the ruling to import bus shells in the future under the new classification. Sanders' argument fails because, to the extent Deloitte "caused" these false statements, all of Deloitte's acts occurred prior to July 19, 1999.

Courts must determine a party's liability under the FCA based on the specific conduct of the party. *United States v. Bornstein*, 423 U.S. 303, 313 (1976). In *Bornstein,* the Supreme Court explained:

> If United [a subcontractor] had committed one act which caused Model [a prime contractor] to file a false claim, it would clearly be liable for a single forfeiture. If, as a result of the same act by United, Model had filed three false claims, United would still have committed only one act that caused the filing of false claims, and thus, under the language of the statute, would again be liable for only one forfeiture. If, on the other hand, United had committed three separate such causative acts, United would be liable for three forfeitures, even if Model had filed only one false claim. The Act, in short, penalizes a person for his own acts, not for the acts of someone else.
> The Government's claim that United "caused" Model to submit 35 false claims is simply not accurate. While United committed certain acts which caused Model to submit false claims, it did not cause Model to submit any particular

>   number of false claims. The fact that Model chose to submit 35 false claims instead of some other number was, so far as United was concerned, wholly irrelevant, completely fortuitous and beyond United's knowledge or control. The Government suggests that United assumed the risk that Model might send 35 invoices when United sent the falsely branded tubes to Model. The statute, however, does not penalize United for what Model did. It penalizes United for what it did.

*Id.* at 312. Here, the FCA penalizes Deloitte for what it did, not what NABI, Inc. did subsequent to Deloitte's involvement. The date of Deloitte's alleged misconduct is either (1) when Deloitte made false representations to the government in the June 1998 protest that led to the reclassification ruling, or (2) when Deloitte advised NABI, Inc. it could use the ruling for future imports,[2] both of which occurred prior to July 19, 1999. For purposes of the statute of limitations, the date of Deloitte's violation is not the date of any subsequent import by NABI, Inc.; Deloitte did not prepare paperwork for those imports and had no control over those imports.[3]

By claiming the limitations period as to Deloitte renews again every time NABI, Inc. imports a bus shell, Sanders essentially asks me to hold Deloitte liable in perpetuity based on Deloitte's pre-limitations period advice. Sanders would have Deloitte assume the risk that NABI, Inc. might forever rely on Deloitte's contribution, a proposition rejected in *Bornstein*. *See id.*

---

[2] To the extent Sanders claims Deloitte is liable into the future for the advice about using the ruling for future imports, the element of causation may be lacking. Deloitte's advice can hardly be said to have "caused" NABI, Inc. to make false statements accompanying subsequent imports. The reclassification ruling of November 1998 spoke for itself; it told NABI, Inc. that future bus shells could be imported under the new classification. Deloitte's advice was superfluous.

[3] Some of these imports allegedly occurred after July 19, 1999, although Sanders fails to describe a single specific import.

4

A separate order denying Sanders' motion for reconsideration or to alter or amend judgment is being entered herewith.

February 15, 2006        /s/
Date                     J. Frederick Motz
                         United States District Judge