# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

CHAMBERS OF
J. FREDERICK MOTZ
UNITED STATES DISTRICT JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-0782
(410) 962-2698 FAX

January 3, 2007

Memo To Counsel Re: United States of America, *ex rel*. Thornton G. Sanders v.
North American Bus Industries, Inc.
Civil No. JFM-02-3084

Dear Counsel:

As I indicated at the conclusion of the hearing held on December 8, 2006, my schedule unfortunately does not permit me to write an extensive opinion. Instead, I am issuing this memorandum opinion, stating my rulings and the reasons for them. I hope you understand that the form of my opinion does not reflect that I have not taken your arguments seriously.[1]

Defendant's motion for summary judgment will be granted in part and denied in part. Plaintiff's motion for summary judgment will be denied.

I. *Count I*

Plaintiff's "Buy America" claims asserted in count I are based upon the contention that NABI's payments to NABI Hungary for Engineering and Technology ("E&T") services were provided "in sham contracts designed to disguise the true purpose of these payments, i.e., to enable NABI to qualify for the federal subsidy and to shift taxable income to the parent company in Hungary." (Relator Sanders' Mem. of Law in Supp. of Cross Mot. for Partial Summ. J. as to Liability on Counts I, II, III, & IV of his Second Am. Compl. and Sanders' Opp'n to Def.'s Mot.

---

[1]On December 20, 2006, counsel for the United States wrote a letter requesting that I delay my decision until February 1, 2007, in order to give the United States an opportunity to reconsider its decision not to intervene in this action. The United States' request is denied. This action has been pending since 2002, and the United States has twice been invited to intervene and has twice declined to do so. The United States received copies of all the electronic filings in this case, including the memoranda submitted in connection with parties' cross-motions for summary judgment. While the motions were pending, the United States made no effort to intervene, and it chose not to attend the hearing held on December 8, 2006. Under these circumstances, the time has come for this court to rule without hearing from the United States.

1

for Summ. J. at 28 [hereinafter Pl.'s Mot. for Summ. J.]).[2] I am satisfied that genuine issues of fact exist as to whether the services for which the payments were made were fictitious. Accordingly, both parties' summary judgment motions as to count I are denied.

However, as defendant argues, there is no evidence in the record that any other company would have sold the buses for any less than defendant charged or that the purchasers did not receive the buses for which they contracted. Therefore, under *Harrison v. Westinghouse Savannah River Co.*, 352 F.3d 908, 923 (4th Cir. 2003), plaintiff has no claim for actual damages. On the other hand, *Harrison* also makes clear that the incurring of actual damages is not a requirement for a claim under the False Claims Act. *Id.* at 75 n.7. If a false statement caused the United States to pay out money, a False Claims Act claim will lie even if the United States did not suffer actual damages. Under those circumstances, the defendant would be liable only for the civil penalties imposed by the Act, *see* 31 U.S.C. §3729(a).

II. *Counts II and III*

The gravamen of plaintiff's claims in counts II and III is that defendant obtained a refund of customs duties and, after the refund was obtained, avoided further customs duties by falsely stating that certain component parts were permanently installed on the frames of the buses being imported from Hungary. Defendant contends, *inter alia*, that any misstatements concerning alleged permanent installation were immaterial because even if the components had not been permanently installed, the imported items would have been classified as "unfinished buses" (that were free from customs duties) rather than "bus shells" (to which a 4% customs duty applied).[3]

Plaintiff argues that the very fact that false statements were made demonstrates that they were material. The obvious conceptual fallacy in this argument is that it necessarily conflates the element of materiality with the elements of inaccuracy and scienter. If plaintiff's argument were accepted, the very fact that false statements were knowingly made would mean that they were material despite the well established law that falsity, scienter, and materiality are separate elements of a False Claims Act claim. *See Harrison v. Westinghouse Savannah River Co.*, 352 F.3d at 913. Plaintiff further argues, however, that *Harrison* supports his position because it holds that the element of materiality requires only that the alleged false statements have "a natural tendency to influence or [are] capable of influencing the government's funding

---

[2]Plaintiff now limits his Buy American claims to a total of 121 buses that were sold to Miami Metro Dade, Maryland MTA, and WMATA. Plaintiff thereby acknowledges that even if the cost of the E&T services were added to the buses sold to other entities, the requirement under the Buy America Act that 60% or more of the component value of the buses be of United States origin would have been met.

I also understand that plaintiff is abandoning his claims that (1) defendant made a false statement with respect to the CompoBus body, and (2) defendant made a false statement with regard to the articulated joint assembly.

[3]Defendant also argues that plaintiff's proof of scienter is insufficient to withstand defendant's summary judgment motion. I need not reach that issue because I find that the alleged misstatements were not material.

decision[.]" *Id.* at 917.  According to plaintiff, the critical issue is "whether the [alleged] false statements *could* have affected [the] Customs decision." (Pl.'s Mot. for Summ. J. at 19).  Even accepting this formulation as accurate, I would find that the Customs decision could not have been affected by the alleged false statements relating to permanent installation because the decision would have been the same whether or not the components had been permanently installed.  I note, however, that in my judgment a more precise formulation of the proper inquiry is whether, even in the absence of permanently installed components, Customs still would have classified the NABI imports as unfinished buses rather than bus shells.

The summary judgment record makes clear that the answer to this inquiry is "yes."  Under a 1993 Customs ruling concerning the classification of trolley bus shells being imported into the United States from Canada, (cited by Damon B. Pike, the customs broker who submitted the protest letter for NABI), the critical question is whether imported items had "the essential character of public transport vehicles" at the time they were imported.  Customs Priv. Ltr. Rul. NY 802788 (Feb. 24, 1993).  This depends upon whether the shell had been shaped into the form of a public transportation vehicle and whether important components were present at the time of importation.  Plaintiff acknowledges that this is the appropriate inquiry: "[f]or classification purposes, it does not matter if any of the components were permanently installed.  A bus that is imported with all of its components, but completely disassembled, would still be classified as a bus." (Pl.'s Mot. for Summ. J. at 14.)  Moreover, it is undisputed that the imported frames were in the shape of buses, and the evidence in the summary judgment record makes clear that important component parts were present when the frames were imported.  Plaintiff's own industry expert, Richard Cooper, who was NABI's vice president of engineering at the time the protest letter was written, supports this assessment in his declaration and deposition testimony. (Cooper Decl. ¶10, Ex. E of Pl.'s Mot. for Summ. J.; Cooper Dep. 118:15-119:18, Ex. 6 of D.'s Mot. for Summ. J.))[4]

III. *Count IV*

In count IV plaintiff claims that by declaring only the contract prices and not the allegedly fictitious cost for E&T services, defendant underpaid Customs duties.  This claim is unavailing as to the buses that were the subject of defendant's successful protest to Customs and to buses imported thereafter because "unfinished buses" are not subject to any Customs duty regardless of their price.  Plaintiff asserts in his reply brief, however, that "the ruling on the

---

[4]Defendant has presented the testimony of Stuart P. Seidel, who previously served as "an attorney, supervisory attorney, and Senior Executive with the United States Customs Service" and who has 37 years of experience in customs and international trade, to support its position that the alleged false statements were immaterial.  (Seidel Dep. at 1, Ex. 2 of Def.'s Mot. for Sum. J.)  Plaintiff challenges the qualifications of Mr. Seidel, arguing that because he "is qualified as a Customs legal expert and not as an industry expert, he should have no role in assisting this or any Court in determining the common or commercial meaning [of] the terms of the tariff schedule." (Pl.'s Mot. for Summ. J. at 20).  I find this argument unpersuasive.  However, even if Mr. Seidel's testimony is disregarded, for the reasons I have stated, the summary judgment record is clear that the alleged false statements were not material.

protest only provided duty-free treatment for entries of bus shells with the date of April 12, 1997 or later.  NABI is required to pay duties on all bus shells before that date."  (Pl.'s Rep. Mem. in Supp. of Pl.'s Cross Mot. for Summ. J. at 13).  Defendant has not responded to this argument in writing, and the record is unclear as to what buses (if any) were imported prior to April 12, 1997, or whether other issues are presented as to any such buses.  Under the circumstances, I will deny defendant's motion for summary judgment as to count IV but permit defendant to file another summary judgment motion as to that count if it chooses to do so.

Despite the informal nature of this letter, it should be flagged as an opinion and docketed as an order.

Very truly yours,

/s/

J. Frederick Motz
United States District Judge

4